1839.

HITCHCOCK AND WIFE *v.* SKINNER OR TREDWELL *et al.*

ALTHOUGH a tenant in common out of possession files a bill for partition, and states another to be in possession of the whole estate, yet the bill will hold ; for the possession of one is the possession of all.

Partition can be had of a mere equitable estate.

A trustee with power of sale, and having a vested right in a part, cannot by a conveyance from, and then a reconveyance to himself, executed after a bill filed for partition, affect the proceedings.

There must be an order to allow a defendant to testify; and an objection taken at the commencement of the examination and noted by the examiner is sufficient, without a formal notice to suppress.

The deposition of a disinterested person, who afterwards becomes interested, can be read.

A tenant in common who had, by defending a suit, kept the property in the family, allowed for counsel fees paid.

Tenant in common in possession, allowed for substantial and useful improvements; but not for such as are merely ornamental. Mode in which the tenant is to get such allowances.

Tenant in common in possession, charged with an occupation rent.

Form of a decree in partition of inquiry into expenditures, &c., by tenant in possession.

BILL for partition. All the material facts are stated in the opinion.

6th June.
1st July.

*Mr. Western,* for the complainants.

*Mr. Silliman,* for the defendant, Hannah Skinner.

THE ASSISTANT VICE-CHANCELLOR :—The original bill in this cause was filed by the mother of the present complainant, for a partition of certain real estate, and an account of her share of the rents and profits. The complainant having died, the suit was revived in the name of the present complainant, as heiress at law ; but no letters of administration having been taken out by her, it was not revived as to a claim for rents and profits accrued at the death of her mother. (See 6 *Paige*, 308.) Letters having

since been obtained, the cause has been revived in the name of the present complainant as administratrix.

The two claims are therefore united in the same person, and the objection of the defendants on that account, is clearly untenable.

By an instrument dated the 23d day of June, 1812, John Tredwell conveyed certain premises to the defendant, Hannah his daughter, first as to one ninth for her sole and absolute use, and next as to the remaining eight ninths, upon trust, and to and for the only proper uses, benefits and behoofs of Abigail Hoffman, wife of Elias Hoffman, Phebe Pell Tredwell, Martha Tredwell, John Murray Tredwell, Adelia Tredwell, Joshua Pell Tredwell, Sarah Ann Tredwell and William Starr Tredwell, children of the said John Tredwell, and their heirs and assigns, that is to say, upon trust, to receive the rents, issues and profits of the said several pieces and tracts of land, and to apply the same to and for the benefit, use and behoof of the said Abigail Hoffman, wife of Elias Hoffman, Phebe Pell Tredwell, Martha Tredwell, John Murray Tredwell, and William Starr Tredwell, their heirs and assigns, in such proportion to each, as in the sound discretion of the said Hannah Tredwell, her heirs and assigns might seem proper. And upon such further trust to pay out from said rents, issues and profits, for the maintenance and education of the said children, as in the opinion of the said Hannah Tredwell, her heirs or assigns might require it, such yearly sum and sums of money as for their said maintenance and education might be requisite and proper, and full power and authority is given by the said John Tredwell to the said Hannah Tredwell, her heirs and assigns, to raise and levy upon the said premises, so conveyed in trust, or any part thereof, such sum or sums of money as might, in her sound discretion, be deemed expedient for the due execution and performance of the trusts therein mentioned, and full power and authority is thereby given to the said Hannah Tredwell for that purpose, to seal, execute and deliver any mortgage or mortgages on the said premises, or any part thereof; and on receipt of such sum or sums

of money upon such further trust, to apply the same to and for the uses and trusts therein before mentioned; and full power and authority is thereby given to the said Hannah, to lease and to farm let the said several pieces, parcels or tracts of land so conveyed in trust, or any or either of them, at and for such term of years, and at such yearly rent as to her, in the exercise of her sound discretion, might seem proper ; and leases for the same to make, and execute, and deliver, containing such clauses, covenants and agreements, as she might require and impose. And upon further trust to receive and apply such rents to and for the use, benefit, maintenance or education of such child or children, as might require the same, and for whom, in the opinion of the said Hannah, it shall be necessary ; and the said Hannah Tredwell is thereby fully authorized and empowered to sell and convey at any time thereafter the said several pieces, parcels or tracts of land, or in any or either of them so conveyed to her in trust, for the best price that can be obtained for the same, and to give and execute a good and sufficient deed in law to the purchaser thereof, and in case of such sale, or such further trust, to receive the proceeds, and to apportion the same to and among the several children thereinbefore named, who shall be living at the time of such sale, their heirs and assigns, and such share of each child or children as shall have attained the age of twenty-one years, shall be paid to such child or children, his or their heirs or assigns ; and such share of the proceeds of such sale as shall be apportioned to and among such child or children, as shall not at that time have attained the said age, shall be placed out for his, her or their benefit, at the sound discretion of the said Hannah Tredwell, to and for the sole use, benefit and behoof of such child or children, his, her or their heirs or assigns. Provided always, that if, at the time of the said sale and the receipt of the proceeds thereof, any or either of the said children should not have attained the age of twenty-one years, then from the share of such child or children as shall have attained the age of twenty-one years shall first be deducted such part thereof as, in the opinion

1839.

Hitchcock and
   Wife
     v.
Skinner or
Tredwell et al.

of the said Hannah Tredwell, shall be sufficient for the support, maintenance and education of such of the said children as should be under age, until they respectively attain their full age ; and it is thereby declared by the said John Tredwell, that the estate thereby conveyed in trust to the said Hannah Tredwell, her heirs and assigns, and the several trusts thereinbefore particularly vested and declared should nevertheless be subject to the right, title, interest, property, claim and demand of the said Hannah Tredwell, her heirs and assigns, of, in and to the undivided ninth part of the said several pieces, parcels or tracts of land, thereinbefore conveyed to the said Hannah Tredwell, her heirs and assigns, to and for her own use, benefit and behoof, and the benefit and behoof of her heirs and assigns forever.

The defendant insists that the bill cannot be sustained for a partition, because it is stated in it, and averred in the answer, that the defendant Hannah has been and is in possession of the premises.

This objection is of no force. The possession of one tenant in common is that of his co-tenants. There may be a partition of a mere equitable estate, under the trust deed, supposing the estate to be such ; (*Cartright* v. *Pulteney*, 2 *Atk.* 380. *Cose* v. *Smith*, 4 *Johns. C. R.* 271,) and the statute relative to partitions refers to an adverse possession only.

Then the only shadow for this defence depends upon the deed executed by her to William S. Tredwell, after the bill was filed, as if in execution of the deed of trust, and the conveyance back to her on the ensuing day, under which she says she is seised in fee. It is impossible to imagine that a device by a trustee of this nature should have the slightest effect in a court of chancery. The defendant must be treated as resuming all her relations to the complainant, under the re-conveyance, if her deed had any effect whatever.

A preliminary question is next to be disposed of, as to the admissibility of the deposition of the defendant William S. Tredwell. An order was made on the 3d of No-

vember, 1835, that Hannah and William S. Tredwell have leave to examine their witnesses named in the notice given by them under the rule. That notice included the name of William S. Tredwell.

When Tredwell was produced to be examined on the 11th of November, 1835, this objection was taken before a question was put: " The counsel of the complainant here objects to the examination of this witness, he being a party defendant." A notice to suppress the deposition was served on the 4th of June, when the term of the court commenced on the third, and the cause was heard on the 6th. I put this notice entirely out of view, nor do I think that the 85th rule as to notice applies to this case.

The 73d rule directs, that where a party wishes to examine a defendant as a witness, he may within the time specified on filing an affidavit that such defendant is a material witness, and is not interested in the matter to which he is to be examined, have an order of course for his examination, saving just exceptions. The party is then to be examined, but the adverse party may at the hearing object to his competency.

In the case of *Sharp* v. *Runk and others*, (*Halsted's Digest*, 173,) it was held, that before a party can be examined as a witness, an order ought to be obtained for the purpose, and such order should be produced when he attends to be examined; that such order is of course before a decree; and that if he is examined by a co-defendant without an order, and the complainant also examines him without objection, it is too late to object at the hearing. The complainant should have moved to suppress the deposition before hearing, and then a farther opportunity might be given to examine the witness if necessary. In *Barden* v. *Gorman,* (2 *Molloy*, 376,) it was held, that where a defendant was examined as a witness without an order, his deposition could not be read, although he was afterwards struck out of the bill in the original cause, but continued as a party in a cross cause. It is true that, in England, the order is made as of course, and merely upon the suggestion of counsel before decree ; (*Hurd* v. *Partington*,

Vol. I.    4

1 *Younge*, 307. *Lee* v. *Atkinson*, 2 *Cox*, 413.) And certainly if the principle of *Lee* v. *Atkinson* is correct, any order is a needless form ; the competency should be left entirely to be decided at the hearing.

But when I find a rule of the court requiring an affidavit to be filed, upon which to ground an order, and requiring such an order to be entered, I conclude that the form was of consequence, or it would not have been required.

The objection taken before the examiner was clearly sufficient to warn the opposite party of every objection arising from the situation of the proposed witness as a party. To have added that an order ought to be obtained was unnecessary.

And as to the order of the 3d of November, 1835, the court never could have meant by such general language as is used, to sanction the examination of a defendant without an order, any more than to have rendered valid the deposition of a witness named in the list, who turned out manifestly incompetent.

The testimony in question has been read *de bene esse*, under the difficulty I stated at the hearing, arising upon the statute under which I act. I do not think it would vary the decree I shall make, supposing it admissible. But I shall make it part of the decree, that it be not read before the master in the account directed ; and thus if an appeal is had, the question can be regularly carried up.

The objection is not waived by cross examining the witness. (*Rogers* v. *Dibble*, 3 *Paige*, 240. *Harrison* v. *Courtauld*, 1 *Russ. & Mylne*, 428.)

The deposition of the present complainant, taken when her mother was a party complainant, to whose rights she has succeeded, is clearly admissible. (*Haws* v. *Hand*, 2 *Atk.* 615.

As to the merits of the cause, the relief is first resisted upon the ground that the mother of the complainant agreed to release the property to the defendant, at a price to be fixed by appraisement ; that such appraisement was made by her consent, and that the complainant should be com-

pelled to abide by it and convey. There is not, in my opi-
nion, the least evidence of such an agreement binding upon
the mother ; nor of her appointment, or assent to the ap-
pointment of an appraiser. Badeau disclaims all know-
ledge of her appointing him. Sontice says he did not
know to whom he was appraising the farm.

Assuming that a partition and account should be decreed, the next inquiry is, what allowances should be made to the defendant.

The costs of the cause of *Tredwell* v. *Pell* were paid by the defendant Pell, under the express agreement signed by the solicitor of the complainant in that suit, dated the 3d of March, 1835. I cannot charge the present complainant with any part of the costs, taxable as between client and solicitor, and not taxed against Pell. I am inclined, however, to restrict that paper to its letter. It exempts the mother of the complainant from " costs and trouble." She appears undoubtedly to have wished that the litigation should not proceed. It is certain that but for that litigation, the whole property would have been swept away. Her opposition may imply a renunciation of her interest, upon condition of an exemption from responsibility. But if her descendant reclaims that interest, the just condition of sharing the expense which preserved it, ought to revive, at least for every thing not the subject of express stipulation. I shall therefore direct an inquiry, what counsel fees were actually paid by the mother of the complainant, in and about the prosecution of the cause of *Tredwell* v. *Pell*, and in the foreclosure suits instituted by Pell, and what fees and costs were paid or incurred upon the proceedings to set aside the sales under the decrees therein, which led to the allowance of two thousand dollars, upon account of Pell's claim.

It is said by counsel, that debts of John Tredwell were paid by the defendant Hannah, and among others he mentions that of Wiggins and Booraem, for which an allowance is claimed ; and also, that the master should ascertain what debts have been so paid, and should allow them.

I am at a loss to understand the ground of this claim, as to the debt to Wiggins and Booraem. This originated after the trust deed of 1812; the judgment obtained upon it was assigned to Joshua Pell for $500; and that demand, with his other claims, were disposed of by the decree in *Tredwell* v. *Pell*, and the property in question exempted from them.

Again—in the defendants bill filed in the above-mentioned cause, and sworn to, she states, " that nothing now remains unpaid of the debts which Tredwell owed at the time of the conveyance, but the debts claimed by the defendant Pell." This bill was filed in 1822.

In her answer to the present bill, she says that soon after the conveyance, she paid out of her own money all the debts owing by said Tredwell at its date, except that to Pell, with a view to the protection of the property. None are specified. I do not think, however, that she is to be shut out from proving such debts as would be justly chargeable upon the trust property. The decree in *Tredwell* v. *Pell*, did not shut out all antecedent creditors, but only Pell himself; and there were some special grounds, such as his assent to, and procurement of the deed, to support that decree.

With respect to improvements, the tenant in possession has an undoubted right to be allowed for them, if they are of a substantial and useful character. I do not think that she can put her co-tenant to any charge for those of a merely ornamental nature. The course of the court appears to be, either to require payment of the rateable proportion of the improvements before division, or to add the proportion to the share to be allotted to the tenant in possession. (*Swan* v. *Swan*, 8 *Price*, 518. *Carter* v. *Carter*, 5 *Munf*. 106.) I shall therefore direct, that the master inquire as to the value of the improvements made upon the premises by the defendant, or by her procurement, and upon the appointment of commissioners, a proper disposition of the amount may be made. The testimony shows, that these improvements were made by Cap-

tain Skinner, who is not before the court, and appears to have had no legal interest in the premises. No claim upon the property. on his behalf, or of his representatives, as against the complainant, could be sustained. I must take the improvements as made by the defendant.

The defendant having been in possession of the premises for the whole period, must be charged with an occupation rent. ( *Turner* v. *Morgan*, 8 *Vesey*, 145.) She claims an allowance for the support of the complainant and her mother, during the time they resided upon the place. I am happy that the testimony of John Sontice and Phebe Le Count, enables me to arrest any further profitless litigation upon this subject. I consider the maintenance afforded as equivalent to the proportion of the rent which would otherwise be payable, and shall exclude any charge for rent during that period. A claim is, I also understand, set up for an allowance for the support of John Tredwell, the father. However meritorious such a claim may be, I do not find it within the scope of the trust deed, and cannot sanction it.

Although by the production of the trust deed, the title of the complainant to the extent of one ninth, is established, yet the death of Phebe and John Tredwell, two of the children, is stated and admitted ; but it does not appear at what time they died. The interest of the complainant will of course be changed, and the account be varied, according to the times of their respective deaths. It may also be that the presumption of death arises as to Joshua Tredwell, who is alleged to have left this country when an infant. (See 1 *R. S.* 749, § 6. *Rust* v. *Baker*, 8 *Simons*, 443.) The master must inquire as to the periods of the death of Phebe and John, and also whether Joshua is now alive, the time of his leaving this country, and if since heard from, and when.

These circumstances render it necessary, if it were not otherwise so, that the general order of reference to ascertain the rights, titles and interests of the parties, should be made.

1839.        A decretal order of reference must be entered upon the
Hitchcock and principles herein stated.(a)
Wife
v.
Skinner or
Tredwell et al.    (a) The following are the *heads of the decree :*

1. A reference to a master to ascertain the rights, titles and in-
terests of the parties complainant and defendant in the premises,
whereof partition is sought, and to report the same, with an abstract
of the conveyances by which the same are held. The master to
ascertain the times of the death respectively of John Tredwell and
Phebe Tredwell, named in the deed of trust; and also, whether
Joshua Tredwell is now living, or has left the State of New-York;
and when; and whether since heard from, and when.

Also, to report whether the premises are so situated, that an ac-
tual partition thereof cannot be made without great prejudice to
the parties; and if he finds that a sale will be necessary, that he
make the inquiries directed by the 178th rule of this court.

2. The master is to take and state an account between the com-
plainant and the defendant, Hannah Skinner, alias Tredwell, of
the rents and profits of the premises in question in this cause; and of
the allowances to be made the said Hannah upon the following
principles:

That the said Hannah be charged the one equal ninth part of
what such master shall find, would have been a fair occupation
rent of such premises, from the 23d day of June, in the year 1812,
to the 23d day of December, 1815; that no rent or profits be charged
to her from the said 23d day of December, 1815, to the 23d day of
July, in the year 1823; with liberty, however, to either of the parties
to show, that the day of the commencement of the residence of
Abigail Hoffman with the said Hannah, was prior or subsequent
to the said 23d of December, 1815, and to vary the charge of rent
accordingly.

That the said Hannah be charged with the one ninth part of a rea-
sonable occupation rent of such premises, from the said 23d day of
July in the year 1823, to the time of the death of Phebe Tredwell
or John Tredwell, whichsoever shall be proven before him, to have
died first.

That she be charged with the one eighth part of a reasonable
occupation rent from the time of the death of the said Phebe or the
said John, whichsoever shall be proven to have died first, unto the
time of the death of the survivor of them, and from and after the
death of the survivor with the one seventh part of such rent, until
the time of taking such account. But in case such master shall
find that the said Hannah was not in the actual occupation of such
premises, during any part of the periods aforesaid, then such master

---

to charge her with such rents as she shall have received, or with ordinary diligence might have received.

3. The master is to ascertain what counsel fees were actually paid by the said Hannah Tredwell, in and about the prosecution of the suit in which she was complainant, and Joshua Pell defendant, and to charge the complainant her rateable proportion of such fees; and also with her proportion of the taxable costs and counsel fees actually paid in and about the application to set aside the sales in the suits instituted by Joshua Pell, for the foreclosure of the mortgages mentioned in the cause of *Tredwell* v. *Pell.*

4. The defendant to be allowed for all proper and necessary repairs, and disbursements for taxes, assessments, and otherwise, about the premises; and the master is also to ascertain the value of the improvements put upon such premises by the defendant, or by her procurement, of a substantial and permanent nature, but not such as were merely ornamental.

5. The master is to ascertain whether any and what debts of the said John Tredwell, due on the 23d of June, 1812, have been paid by the defendant, and when, and the nature of such debts. But the master is not to include, in such inquiry, any debt due or owing to Joshua Pell, or the debt to Wiggins & Booraem, assigned to him. The question whether such debts shall be allowed as credits to the defendant to be reserved.

6. The usual clause for production of books, &c., examination of parties, and reservation of further directions.